730 P.2d 491

**Larry F. LONG, as Personal Representative of the Estate of Erin Katherine Long, a minor, deceased, Plaintiff/Appellee,**

v.

**William WEAVER, M.D., Ann Kosloske, M.D., Jane Goldthorn, M.D., John Mangione, M.D., University of New Mexico/Bernalillo County Medical Center, and the Regents of the University of New Mexico, Defendants/Appellants.**

**No. 9302.**

Court of Appeals of New Mexico.

Oct. 28, 1986.

Alfred M. Carvajal, Alfred M. Carvajal, P.A., Albuquerque, for plaintiff/appellee.

Douglas A. Baker, Jeffrey Twersky, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendants/appellants.

## OPINION

FRUMAN, Judge.

This is an interlocutory appeal from a denial of defendants' motions for summary judgment in an action for wrongful death as a result of alleged medical negligence. The action was brought, in pertinent part, pursuant to the Tort Claims Act, NMSA 1978, Sections 41-4-1 through -29 (Repl. 1986). Generally stated, the certified question involves the issue of the fraudulent concealment of relevant information by the defendants, and the application of Section 41-4-15(A), which is the controlling statute of limitations. The facts pertinent to this appeal follow.

Plaintiff is the father and personal representative of the estate of Erin Katherine Long, a minor, deceased. The individual defendants are physicians who at all material times were employed by defendant University of New Mexico Hospital, a health care provider, which is operated by the defendant Regents.

Erin Long was admitted to the hospital on March 21, 1983. She was suffering from bleeding esophogeal varices. The next day, hospital physicians attempted to stop the bleeding by using a special tube. On March 30th, several days after the tube had been removed, hospital physicians diagnosed a perforation of Erin's esophagus. On April 6th and April 19th, operations were performed to repair the perforation. On July 14th, an open liver biopsy and cholangiogram were performed.

Erin Long remained hospitalized at the hospital until her death on August 2, 1983. The specific cause of death was not determined because an autopsy was not performed. However, both the Death Summary and the Uniform Death Note identify the esophageal perforation as one of several possible causes or contributing factors leading to Erin Long's death.

On or before October 11, 1983, plaintiff retained a lawyer to represent him and signed a medical release which gave the lawyer access to Erin Long's medical records. Plaintiff later retained a second lawyer, his present counsel. On September 28, 1984, this counsel wrote the hospital, informing it that he had been retained to represent plaintiff in a wrongful death action against the hospital. On August 2, 1985, the second anniversary of Erin Long's death, the complaint in this cause was filed.

As part of their defense and in support of their motions for summary judgment, defendants have claimed that Section 41–4–15(A) establishes a bar to this action. Specifically, defendants claim that the statutory period began to run no later than March 30, 1983, when the esophageal perforation was diagnosed. They further claim that Erin Long's mother was informed of this diagnosis on April 6, 1983. Thus, defendants assert, the filing of the complaint on August 2, 1985 was untimely.

The plaintiff's position is that, because of the fraudulent concealment of the malpractice alleged in his complaint, he did not learn of the cause of action until September 28, 1984. He further claims that Section 41–4–15(A) was tolled until that date, again because of the alleged fraudulent concealment of malpractice by defendants, and thus the complaint was timely filed. However, on the basis of the following, the question of fraudulent concealment need not be analyzed.

Section 41–4–15(A) provides, in pertinent part: "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death...." [Emphasis added.]

The supreme court interpreted this provision in *Aragon & McCoy v. Albuquerque National Bank*, 99 N.M. 420, 424, 659 P.2d 306, 310 (1983), as follows: "The plain language of the statute indicates that the period of limitations began to run when an 'occurrence resulting in loss' took place. *Until such a loss took place, the statute of limitations could not begin to run.*" [Emphasis added.] *See also Irvine v. St. Joseph Hospital, Inc.*, 102 N.M. 572, 698 P.2d 442 (Ct.App.1984).

The parties did not consider *Aragon & McCoy* in their initial briefs to this court, and we therefore requested supplemental briefs as to the effect of that case upon the issue of whether the complaint was timely filed. In plaintiff's supplemental brief, he continues to promote the idea of fraudulent concealment to bolster his timely filing argument, and offers no insight as to how *Aragon & McCoy* may provide an alternative, augmenting argument in his favor.

Defendants, in their supplemental brief, maintain that *Aragon & McCoy* provides several bases that support their position. The first is that the time for commencing this action began to run when there *clearly* was an occurrence and a resulting loss or injury, and that both of these elements were in existence by March 30, 1983.

Secondly, defendants assert the general principle of law that a cause of action accrues at the earliest time it arises. The cases cited by defendants to support this proposition are distinguishable. In *Gonzales v. Coe*, 59 N.M. 1, 277 P.2d 548 (1954), the decisive issue was whether the claimant knew or should have known of his disability as of the date of his accident. Since his injury was not latent and was apparent at the time of the accident, the court found that his suit for workmen's compensation was untimely filed. A similar rationale formed the basis for the decision reached in *Noland v. Young Drilling Co.*, 79 N.M. 444, 444 P.2d 771 (Ct.App.1968). In *Noland*, the court also explicitly excluded the discussion of a compensation claim arising

from the death of a workman from the parameters of its opinion. Additionally, neither of these cases involved the construction of a statute that contains alternatives, as is involved here.

Defendants have also cited *Hammons v. Muskogee Medical Center Authority*, 697 P.2d 539 (Okl.1985) as authority for their second proposition, but have not discussed it in their supplemental brief. The central issue in *Hammons* is whether a legislative amendment to a tort claims act should retroactively apply to bar a wrongful death action, and we do not find this case to be applicable to the issue at hand. Defendants' final authority, *Carter v. Cross*, 373 So.2d 81 (Fla.App.1979), reiterated the principle that a cause accrues from the time of the injury rather than when the full extent of the damages is ascertained. The primary focus of the court was on whether an exception to this principle was created by the enactment of an automobile no-fault law, and the court determined that it did not. This case and its reasoning do not persuade us regarding the merits of defendants' position.

■ Defendants recognize that the word "or" as used in a statute has a disjunctive meaning that indicates an alternative, such as "either one or another," unless this meaning is contrary to the context and main purpose of all of the statutory words. *See First National Bank v. Bernalillo County Valuation Protest Board*, 90 N.M. 110, 560 P.2d 174 (Ct.App.1977). Given this, they contend that a plain, simple reading of the statute requires our finding that the cause accrues upon the happening of either the loss, the injury, or the death, whichever occurs first. This requires reading something into the statute that is not there, and we will not do so. *Redding v. City of Truth or Consequences*, 102 N.M. 226, 693 P.2d 594 (Ct.App.1984).

The application of Section 41–4–15(A) in *Aragon & McCoy* is distinguishable from the situation in this case. In *Aragon & McCoy*, the specific time of the loss was ascertainable, and thus the trial court was able to determine as a matter of law when the limitation period commenced.

■ Defendants have maintained that the incident giving rise to a claim occurred no later than March 30, 1983, and that the limitations period commenced not later than that date, apparently in reliance on *Kern v. St. Joseph Hospital, Inc.*, 102 N.M. 452, 697 P.2d 135 (1985). In *Kern*, however, the cause of action arose under the Medical Malpractice Act. *See* NMSA 1978, Section 41–5–13 (Repl.1986); *see also* Horn, *The Statute of Limitations in Medical Malpractice Actions*, 6 N.M.L.Rev. 271 (1976). In this case, the cause of action arises under the Tort Claims Act. *See Emery v. University of New Mexico Medical Center*, 96 N.M. 144, 628 P.2d 1140 (Ct.App.1981). We have recognized that under the Tort Claims Act the limitation period commences when an injury manifests itself *and* is ascertainable, rather than when the wrongful or negligent act occurs. *See Tafoya v. Doe*, 100 N.M. 328, 670 P.2d 582 (Ct.App.1983); *Peralta v. Martinez*, 90 N.M. 391, 564 P.2d 194 (Ct. App.), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977). In applying *Emery*, an incident does not give rise to a claim until the resulting injury manifests itself in a physically objective manner and is ascertainable. Until these factors are established, the question of fraudulent concealment need not be addressed.

■ Summary judgment is not proper where material facts are in dispute, and when such a dispute does exist, the party against whom the judgment is sought will have all reasonable doubts resolved in his favor. *Garcia v. Presbyterian Hospital Center*, 92 N.M. 652, 593 P.2d 487 (Ct.App. 1979). While the trial court had serious concerns regarding the extent of plaintiff's knowledge of Erin's injury, it found that a genuine issue existed as to when the injury became ascertainable. For that reason, a genuine issue also existed as to when the applicable limitations period commenced.

The trial court relied on inferences arising from two documents: the notice letter of September 28, 1984 and the affidavit of Erin's mother. In her affidavit, the mother refers to her inquiry as to the need for Erin's further surgery and that "she was never informed by defendants that the esophageal perforation undiagnosed for eight days by defendants would render successful treatment impossible[.]" Additional factors that raise the possibility that the injury Erin suffered may not have been physically manifest and ascertainable until she died are an April 19, 1983 diagnosis refers to the esophogeal perforation as being "secondary to placement of a Sengstaken-Blakemore tube"; a June 28th medical summary did not link the perforation to the procedures used to control the bleeding; and Erin had suffered from various, serious medical problems since birth.

In our view, the record supports conflicting inferences on the question of whether the injury Erin suffered was physically manifest and ascertainable prior to her death. It is unclear from the record when the perforation became distinguishable from the problems she had suffered since birth or the condition for which she was admitted to the hospital.

Given these factors, the record supports the trial court's finding as to the existence of a genuine issue of material fact. That issue is: when did the injury manifest itself in a physically objective manner and when was it ascertainable? Accordingly, the denial of defendants' motion for summary judgment was proper. *See Garcia v. Presbyterian Hospital Center*. Even though the rationale that we have used to justify the denial of the motion may differ from the reasons recited in the order of the trial court, its decision is affirmed. *Cf. Scott v. Murphy Corp.*, 79 N.M. 697, 448 P.2d 803 (1968).

IT IS SO ORDERED.

HENDLEY, C.J., and MINZNER, J., concur.