2005-NMCA-013

105 P.3d 317

**Petra MAESTAS, as personal representative of the Estate of Betty Varela, and on behalf of Joe Varela, a minor, Plaintiff–Appellant,**

v.

**Philip G. ZAGER, M.D., Defendant–Appellee,**

and

**Dialysis Clinic, Inc., a foreign corporation, Deborah Bowen, Fresenius Medical Care, Inc., a foreign corporation, and John Doe # 1 and # 2, Defendants.**

No. 24,200.

Court of Appeals of New Mexico.

Nov. 30, 2004.

Certiorari Granted, No. 28,997, Jan. 10, 2005.

Benito Sanchez, Benito Sanchez, P.A., Albuquerque, NM, for Appellant.

Mark L. Ish, Carol J. Ritchie, Felker, Ish, Ritchie & Geer, P.A., Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} We are presented with another circumstance in which we must determine when a statutory limitations period begins to run in a medical malpractice case. The district court applied NMSA 1978, § 41–4–15(A) (1977), contained in the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (1976, as amended through 2004). In the application of Section 41–4–15(A), Plaintiff sought to apply the discovery rule. Defendant fought against application of the discovery rule. The district court determined that, even though Plaintiff was unaware of the record,

the statute began to run at the point when an EMT/paramedic record was created that mentioned a subject that, if investigated further would, as later determined, have led to a possible cause of death.

{2} The issue requires us to interpret Section 41–4–15(A) by analyzing its language and any legislative intent behind its enactment. In addition, we must discuss medical malpractice cases that interpret not only Section 41–4–15(A), but also other statutes that have been applied to medical malpractice claims. Those other statutes are the general personal injury statute of limitations, NMSA 1978, § 37–1–8 (1976); the Medical Malpractice Act statute of repose, NMSA 1978, § 41–5–13 (1976); and the Tort Claims Act claims notice statute, Section 41–4–16.

{3} Once pieced together, the jurisprudential puzzle of judicial tolling decisions does not show a definitive path to follow for the result in the case before us. However, a path must be chosen. Historically, Sections 41–4–15(A) and 41–5–13 were enacted while the "time of the negligent act" rule was in force in medical malpractice cases. *See Roybal v. White*, 72 N.M. 285, 287, 383 P.2d 250, 252 (1963) (applying the "time of the negligent act" rule), *overruled by Roberts v. Southwest Cmty. Health Servs.*, 114 N.M. 248, 837 P.2d 442 (1992). This fact, along with the similarity in language between these two statutory provisions and the change in the judicial tolling landscape by *Cummings v. X–Ray Associates of N.M., P.C.*, 1996–NMSC–035, 121 N.M. 821, 918 P.2d 1321, leads us to conclude that Section 41–4–15(A) is an occurrence rule and that the discovery rule is not to be applied. Thus, we affirm the district court's summary judgment against Plaintiff. We therefore need not address Plaintiff's second issue of whether her diligence in discovering the alleged cause of the injury is a question of fact precluding summary judgment.

## BACKGROUND

{4} Defendant Philip G. Zager, M.D., worked as the director of the Dialysis Clinic, Inc., a private kidney dialysis facility located in Albuquerque, New Mexico (the clinic), pursuant to a contract between the University of New Mexico and the clinic. He was a public employee employed by the University of New Mexico Hospital, a governmental entity.

{5} On May 17, 1999, while undergoing kidney dialysis at the clinic, Betty Varela (decedent) began having severe problems breathing. She was taken off the dialysis equipment and transported by ambulance with EMT/paramedics to Presbyterian Hospital (the hospital), where she died shortly after arrival. After learning that decedent had a medical problem, Plaintiff, the decedent's sister, went to the clinic and then to the hospital. Plaintiff made inquiries at the clinic and at the hospital regarding decedent's condition. At some point, she was informed by personnel at the office of the medical investigator (OMI) that decedent died of an allergic reaction to a prescription drug she was taking. Plaintiff hired an attorney and in early October 1999 obtained copies of the autopsy report and the OMI's report of findings.

{6} The autopsy report explained that decedent died of angioedema (swelling) of the face, throat, and tongue due to an idiosyncratic drug reaction to lisinopril. The OMI's report of findings stated the same conclusion as to the cause of death. Lisinopril is a prescription drug decedent was taking and to which decedent had previously experienced a reaction in 1998. The autopsy report also indicated that Defendant's investigation of the clinic's dialysis equipment and fluids showed "no abnormalities in the tubing, machines, or composition of the fluid." Attached to the autopsy report was a toxicology report. The autopsy report found nothing of significance in the toxicology report.

{7} In October 1999, Plaintiff requested the clinic's medical records relating to decedent. For reasons unexplained in the briefs, Plaintiff did not get the records until September 14, 2000. In August 2000, Plaintiff requested copies of the records of the EMT/paramedics who transported decedent to the hospital. These records indicated that a staff member of the clinic told one of the paramedics that decedent was possibly suffering from an allergic reaction to chlorine in her blood. Another paramedic's report indi-

cated he was told there was chlorine in the decedent's blood.

{8} Plaintiff filed the present action on March 25, 2002, against Defendant, the clinic, and others. In July 2002, through discovery, Plaintiff obtained the OMI's investigation log indicating there had been an investigation on allegations that a chlorine-based solution had been used to clean the dialysis equipment before decedent used it, but that an examination of the equipment showed no contamination. The log also indicated that there was no hemolysis in decedent's blood to indicate chlorine contamination.

{9} Decedent died on May 17, 1999. Section 41–4–15(A) is a two-year statute. Two years from May 17, 1999, was May 17, 2001. Plaintiff first learned of the possibility of chlorine being a cause of death in August 2000, but did not file the action until March 2002. Plaintiff's action was filed some ten months after two years had elapsed from the date of death. However, it was filed within two years of the date Plaintiff asserts she first should have discovered, using reasonable diligence, that chlorine might have been a causative factor. The district court granted summary judgment in favor of Defendant, holding that Section 41–4–15(A) barred Plaintiff's claim. On appeal, Plaintiff asserts that the district court erred in declining to apply the discovery rule and thus, denying her claim.

## DISCUSSION

{10} Section 41–4–15(A) reads:

Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. This subsection applies to all persons regardless of minority or other legal disability.

{11} Plaintiff relies primarily on *Roberts* in which neither the Tort Claims Act nor the Medical Malpractice Act applied. *Roberts* adopted the discovery rule in applying Section 37–1–8 to a medical malpractice claim. *Roberts*, 114 N.M. at 250, 254, 256, 837 P.2d at 444, 448, 450. Plaintiff argues that the *Roberts* discovery rule applies to all medical malpractice claims not falling under the Medical Malpractice Act, and thus the discovery rule applies to Defendant. Plaintiff also argues that cases arising under the Tort Claims Act support her contention that the discovery rule applies in the application of Section 41–4–15(A) to medical malpractice claims.

{12} Defendant argues that *Roberts* does not apply because *Roberts* was decided under Section 37–1–8, while the Tort Claims Act limitations statute, Section 41–4–15(A) controls this case. Defendant asserts that, pursuant to cases arising under the Tort Claims Act, Section 41–4–15(A) begins to run "when the act heralding the possible tort inflicts a damage which is physically objective and ascertainable," or "when the plaintiff begins to experience symptoms, not on a subsequent date when the cause of the symptoms is discovered." (Internal quotation marks and citation omitted.) Defendant argues that because decedent's death manifested and was ascertainable on May 17, 1999, the statute ran two years from that date. Defendant further argues that to apply *Roberts* would be contrary to the plain language of Section 41–4–15(A) that the statute begins to run at "the date of occurrence resulting in loss, injury or death." In order to place the parties' arguments in context, we briefly here distinguish between the discovery rule and the occurrence rule and then give a synopsis of *Roberts* and the Tort Claims Act cases predating *Roberts*. Later in this opinion we will discuss these cases in more detail to determine if they warrant application of the discovery rule to Section 41–4–15(A).

## The Distinction Between the Discovery Rule and the Occurrence Rule

{13} The Court in *Cummings* stated that "[t]wo basic standards determine the beginning of the time period in which a patient must file a claim for medical malpractice. One is sometimes called the 'discovery rule[,]' ... [and] [t]he other standard is sometimes called the 'occurrence rule.'" 1996–NMSC–035, ¶ 47, 121 N.M. 821, 918 P.2d 1321. While the discovery rule focuses on the date

the injury was discovered, the occurrence rule "fixes the accrual date at the time of the act of medical malpractice even though the patient may be oblivious of any harm." *Id.*

{14} The *Cummings* Court interpreted the limitations period in the Medical Malpractice Act, Section 41–5–13, to be an occurrence rule, rather than a discovery rule. *Cummings,* 1996–NMSC–035, ¶¶ 50–51, 121 N.M. 821, 918 P.2d 1321. Further, the *Cummings* Court distinguished between a statute of limitations and a statute of repose, stating that while "[a] statute of limitations begins to run when the cause of action accrues, the accrual date usually being the date of discovery[,] . . . [a] statute of repose runs from a statutorily determined triggering event." *Id.* ¶¶ 49–50. The Court held that, according to the plain language of Section 41–5–13, the statute is a statute of repose and the triggering event is the act of malpractice. *Cummings,* 1996–NMSC–035, ¶¶ 48, 50, 121 N.M. 821, 918 P.2d 1321.

### The Tort Claims Act Cases and *Roberts*

{15} The Tort Claims Act cases predate *Roberts.* The two most applicable are *Emery v. University of N.M. Medical Ctr.,* 96 N.M. 144, 628 P.2d 1140 (Ct.App.1981), and *Long v. Weaver,* 105 N.M. 188, 730 P.2d 491 (Ct.App.1986). *Emery* was a claims notice case decided under Section 41–4–16(A) which requires a claimant to provide notice of his or her claim within ninety days of "an occurrence giving rise to a claim." § 41–4–16(A); *Emery,* 96 N.M. at 148–49, 628 P.2d at 1144–45. *Long,* which followed *Emery,* was decided based on Section 41–4–15(A). *Long,* 105 N.M. at 189, 730 P.2d at 492. *Emery* stemmed from *Peralta v. Martinez,* 90 N.M. 391, 392, 564 P.2d 194, 195 (Ct.App.1977), a pre-Medical Malpractice Act case decided under NMSA 1953, § 23–1–8 (1929), recodified without change at NMSA 1978, § 37–1–8 (1976). Both *Emery* and *Long* applied the holding in *Peralta* that the statute of limitations begins to run on a claim for medical malpractice from the time the "injury manifests itself in a physically objective manner and is ascertainable." *Long,* 105 N.M. at 191, 730 P.2d at 494; *Emery,* 96 N.M. at 149, 628 P.2d at 1145; *Peralta,* 90 N.M. at 394, 564 P.2d at 197. We refer to this rule as the "Peralta rule" in this opinion. By adopting the Peralta rule, *Emery* and *Long* chose not to follow the "time of the negligent act" rule applied in *Roybal. See Long,* 105 N.M. at 191, 730 P.2d at 494; *Emery,* 96 N.M. at 148–49, 628 P.2d at 1144–45.

{16} *Roberts* held that, because the defendant was not a qualified healthcare provider under the Medical Malpractice Act, NMSA 1978, §§ 41–5–1 to –29 (1976, as amended through 1997), the applicable statute was the general statute of limitations governing personal injuries, Section 37–1–8, rather than the specific provision in the Medical Malpractice Act, Section 41–5–13. *Roberts,* 114 N.M. at 254, 837 P.2d at 448. *Roberts* adopted the discovery rule, reciting it as "the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Id.* at 257, 837 P.2d at 451. *Roberts* overruled *Roybal,* expressly and finally closing the door on the "time of the negligent act" rule when applying Section 37–1–8 to medical malpractice claims. *Roberts,* 114 N.M. at 255, 837 P.2d at 449. Like *Emery, Roberts* looked to *Peralta,* reciting *Peralta's* holding to be "that a cause of action accrues when a physically objective and ascertainable injury to the plaintiff occurs." *Roberts,* 114 N.M. at 254, 837 P.2d at 448. However, in adopting the discovery rule, *Roberts* did not express that it was changing, distinguishing, or disfavoring the Peralta rule. *See id.* at 254–57, 837 P.2d at 448–51. *Roberts* appears to have left *Peralta* as it stood, proceeding apart from *Peralta* to adopt the discovery rule. *See Roberts,* 114 N.M. at 254–57, 837 P.2d at 448–51.

### Standard of Review

{17} There exist no disputed facts on this issue. Our review of summary judgment is, therefore, de novo. *Barncastle v. Am. Nat'l Prop. & Cas. Cos.,* 2000–NMCA–095, ¶ 5, 129 N.M. 672, 11 P.3d 1234.

### Interpreting Section 41–4–15(A)

{18} We interpret Section 41–4–15(A) under the rules laid out by our Supreme Court in *Cummings:*

When interpreting statutes, our responsibility is to search for and give effect to the intent of the legislature. We endeavor to fulfill the statute's objectives. Our understanding of legislative intent is based primarily on the language of the statute, and we will first consider and apply the plain meaning of such language. This standard is sometimes called. the "plain meaning rule."

1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321 (citations omitted); *see also Regents of Univ. of N.M. v. Armijo*, 103 N.M. 174, 175, 704 P.2d 428, 429 (1985) (interpreting Section 41–4–15(A) and stating that "[the] Court must attempt to ascertain the intent of the Legislature and should interpret words used according to their plain, literal meaning, provided such an interpretation does not result in injustice, absurdity, or contradiction"). When the statute in question is from a more comprehensive act, the court is to "read the act in its entirety and construe all the provisions together and attempt to view them as a harmonious whole." *Cummings*, 1996–NMSC–035, ¶ 45, 121 N.M. 821, 918 P.2d 1321. "[I]f the language of [the] statute is not ambiguous,. the literal meaning of the words must be applied." *Id.* (internal quotation marks and citation omitted); *Jaramillo v. State*, 111 N.M. 722, 727, 809 P.2d 636, 641 (Ct.App.1991) ("We decline plaintiff's invitation to read language into the statute that is not there."). We should not "read words into a statute unless they are necessary to make the statute conform to the obvious intent of the legislature." *State v. Mendoza*, 115 N.M. 772, 774, 858 P.2d 860, 862 (Ct.App.1993).

### 1. The Language of Section 41–4–15(A)

{19} In determining whether Section 41–4–15(A) is a discovery rule, we are guided by the Supreme Court's analyses of the language of Sections 37–1–8 and 41–5–13 in *Roberts* and *Cummings*, respectively. Section 37–1–8 states: "Actions must be brought ... for an injury to the person ... within three years." *Roberts* looked at this language and found that application of the discovery rule was warranted. 114 N.M. at 255–56, 837 P.2d at 449–50 ("Section 37–1–8 does not state that the limitation period runs from the time of the wrongful act." (internal quotation marks omitted)). On the other hand, Section 41–5–13 states: "No claim ... may be brought against a health care provider unless filed within three years after *the date that the act of malpractice occurred*." (Emphasis added.) The *Cummings* Court found no reason "to depart from the plain meaning of Section 41–5–13 in construing its language," and thus held that Section 41–5–13 was an occurrence rule and not a discovery rule. *Cummings*, 1996–NMSC–035, ¶¶ 46, 48, 121 N.M. 821, 918 P.2d 1321.

{20} Section 41–4–15(A) states: "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after *the date of occurrence resulting in loss, injury or death*." (Emphasis added.) The language of Section 41–4–15(A) is very similar, but not identical, to the language in Section 41–5–13. *Compare* § 41–4–15(A), *with* § 41–5–13. The language of Sections 41–4–15(A) and 41–5–13 are both very different from the language of Section 37–1–8. *Compare* §§ 41–4–15(A), *and* 41–5–13, *with* § 37–1–8. Further, the Tort Claims Act was enacted the same year as the Medical Malpractice Act, in 1976; however, the Tort Claims Act does not only address malpractice. It also addresses negligence of government employees in the construction and maintenance of highways, violations of property or constitutional rights by law enforcement officers, and a host of other claims. *See* §§ 41–4–5 to –12. Thus, in framing Section 41–4–15(A), the Legislature could not simply state "the date that the act of malpractice occurred," as did the Medical Malpractice Act. § 41–5–13. Instead, it stated "the date of occurrence resulting in loss, injury or death," presumably in order to cover all of the possible claims as to which governmental immunity was waived. § 41–4–15(A). Moreover, the temporal focus of Section 41–4–15(A) seems to be on the date of the occurrence rather than the loss, injury, or death, making it considerably more like Section 41–5–13 than Section 37–1–8. This suggests that, just as the *Cummings* Court interpreted the plain language of Section 41–5–13 to be an occurrence rule, we should also

interpret the plain language of Section 41–4–15(A) to be an occurrence rule. *See Cummings*, 1996–NMSC–035, ¶¶ 50–51, 121 N.M. 821, 918 P.2d 1321; *see also State v. Davis*, 2003–NMSC–022, ¶ 12, 134 N.M. 172, 74 P.3d 1064 ("The rule that statutes in pari materia should be construed together has the greatest probative force in the case of statutes relating to the same subject matter passed at the same session of the Legislature.").

### 2. The Legislative Intent Behind and Historical Context of Section 41–4–15(A)

■ {21} Section 41–4–15(A) in the Tort Claims Act, like Section 41–5–13 in the Medical Malpractice Act, is part of a broad statutory scheme enacted to implement a particular legislative policy. An important policy behind the Medical Malpractice Act was to attempt to manage a perceived medical malpractice crisis in New Mexico. *Roberts*, 114 N.M. at 251, 837 P.2d at 445; *see Cummings*, 1996–NMSC–035, ¶ 40, 121 N.M. 821, 918 P.2d 1321 ("[Section 41–5–13] is reasonably related to important governmental interests.... New Mexico reformed its medical malpractice laws in 1976 in response to a much discussed medical malpractice crisis."). Important policies underlying enactment of the Tort Claims Act were to protect the public treasury, to enable the government to function unhampered by the threat of legal actions that would inhibit the administration of traditional state activities, and to enable the government to effectively carry out its services. *Garcia v. Albuquerque Pub. Schs. Bd. of Educ.*, 95 N.M. 391, 394, 622 P.2d 699, 702 (Ct.App.1980). Other legislative purposes underlying the Tort Claims Act were expressed in *Jaramillo* in the context of an equal protection issue. In discussing the fact that Section 41–4–15(A) did not have a tolling provision for persons under a legal disability, the Court gave two reasons why the Legislature could have legitimately chosen that course. *Jaramillo*, 111 N.M. at 726, 809 P.2d at 640.

First, the legislature could reasonably be concerned that there are more claims against governmental than private entities, given the size and far-flung nature of state government operations. This directly increases both the burden of investigating potential claims and the danger of stale claims. Second, the lack of a tolling provision advances the state's interest in predicting and controlling its potential liabilities from year to year. Both of these are legitimate, rational distinctions that are directly related to the failure to provide a tolling period for persons who are mentally incapacitated.

*Id.; see also Armijo*, 103 N.M. at 176, 704 P.2d at 430 (noting that to broaden the limitations period in the Section 41–4–15(A) exception relating to minors "would significantly broaden this statute and undermine the Legislature's intent to establish a measure of repose and to protect to some extent the State's financial resources from stale claims").

{22} Further legislative intent can be gleaned from the fact that when the Legislature enacted the Tort Claims Act, it provided specific waivers of immunity from a variety of tort claims, including, but not limited to, bodily injury claims, and specifically including a waiver applying to malpractice actions against public healthcare providers. *See* §§ 41–4–5 to –12. While permitting specific types of claims through express immunity waivers, the Legislature simultaneously enacted the two-year statute found in Section 41–4–15(A) instead of leaving applicable the three-year personal injury statute of limitations contained in Section 37–1–8 or wording Section 41–4–15(A) in a similar way. Additionally, Section 41–4–15(A) contains a minority tolling provision different than that "which tolls the *general* statute of limitations." *Tafoya v. Doe*, 100 N.M. 328, 331, 670 P.2d 582, 585 (Ct.App.1983) (internal quotation marks and citation omitted). *Compare* § 41–4–15(A), *with* NMSA 1978, § 37–1–10 (1975).

{23} In addition, application of the discovery rule in the limited circumstance of medical malpractice would likely open the door to application of the discovery rule as to all tort claims assertable under the Tort Claims Act. We have no indication that the Legislature intended that result, and we think it is doubtful that the Legislature did intend that re-

sult. Nor do we have any indication that, in enacting the Tort Claims Act and the limitations period in Section 41–4–15(A), the Legislature intended to grant leave for invocation by this Court of a discovery rule exception in the face of the clear, mandatory statutory language that "[a]ctions against a ... public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death," and the fairly stern requirement that the limitation period apply to "all persons regardless of minority or other legal disability." § 41–4–15(A).

▮ {24} That a result may be harsh in some circumstances cannot dictate the outcome of a case. *Cummings* held that Section 41–5–13 is an occurrence rule, not permitting a discovery rule exception, even though the result was "so harsh that the limitations period can run on a potential malpractice claim before the claim even comes into existence," and stating that "[c]ourts often point out that it is not their responsibility to inquire into the harshness of a legislative enactment, the strategy behind a legislative policy, or even the wisdom of a legislative solution to a particular problem." *Cummings,* 1996–NMSC–035, ¶ 59, 121 N.M. 821, 918 P.2d 1321; *see also Jaramillo,* 111 N.M. at 727, 809 P.2d at 641 (interpreting Section 41–4–15(A) to not include or allow tolling or otherwise fashion an equitable remedy despite the plaintiff's argument that the denial would be unjust).

{25} Last, it is important to note another aspect of the historical context of Section 41–4–15(A). *Roybal* determined in 1963 that under the general statute of limitations for personal injuries, then Section 23–1–8, "a cause of action ... accrues at the time of the wrongful act causing the injury." *Roybal,* 72 N.M. at 287, 383 P.2d at 252. This rule, referred to here as the "Roybal rule," focused on the date of the negligence regardless of when the injury was discovered. *Id.* Section 41–5–13, enacted in 1976, only a year before the enactment of Section 41–4–15(A), essentially codified the Roybal rule that "a cause of action ... accrues at the time of the wrongful act causing the injury" in medical malpractice cases. *Roybal,* 72 N.M. at 287,

383 P.2d at 252; *see* § 41–5–13; *Roberts,* 114 N.M. at 252, 837 P.2d at 446; *Armijo v. Tandysh,* 98 N.M. 181, 184, 646 P.2d 1245, 1248 (Ct.App.1981) (stating, regarding Section 41–5–13, "the legislative intent was to continue the limitation period stated in *Roybal* "), *overruled on other grounds by Roberts,* 114 N.M. 248, 837 P.2d 442.

{26} When added together, all of these clues of the Legislature's intent when enacting Section 41–4–15(A) indicate that the rule is an occurrence rule, not a discovery rule.

**Case Law Interpreting Section 41–4–15(A)**

{27} Despite the fact that the language in, the legislative intent behind, and the historical context of Section 41–4–15(A) suggest that it is an occurrence rule, Plaintiff argues that "[u]nder any interpretation of [Section] 41–4–15, the cause of action in a medical malpractice case against a state employee does not accrue until the basis for the action is discoverable through reasonable diligence." Defendant argues that no Section 41–4–15(A) case yet has applied the discovery rule and that application of the discovery rule to Section 41–4–15(A) would require reading into the statute language that is not there. In order to address these arguments, we find it necessary to more thoroughly discuss several medical malpractice cases interpreting Sections 37–1–8, 41–5–13, 41–4–15, and –16. We do so in chronological order.

**1. The Case Law**

{28} In 1977 this Court decided *Peralta.* The medical malpractice incident in *Peralta* occurred before the enactment of the Medical Malpractice Act in 1976; therefore, that Act was not at issue. *Peralta,* 90 N.M. at 392–93, 564 P.2d at 195–96. *Peralta* is the original imprint for the Section 37–1–8 and Tort Claims Act cases that came later. *See, e.g., Roberts,* 114 N.M. at 255, 837 P.2d at 449 (discussing *Peralta* ); *Long,* 105 N.M. at 191, 730 P.2d at 494. *Peralta* involved a cottonoid left in the plaintiff's body following a surgery. *Peralta,* 90 N.M. at 392, 564 P.2d at 195. The complaint alleged "that the injuries suffered by plaintiff because of the cottonoid were inherently unknowable to plaintiff." *Id.*

at 394, 564 P.2d at 197. In fact, the cottonoid was not discovered until a second surgery two years after the cottonoid was left in the plaintiff's body. *Id.* at 392, 564 P.2d at 195. The complaint was filed within the statute of limitations if the statute began to run on the date of the second surgery, but not if it began to run on the date that the cottonoid was left in the plaintiff's body. *Id.* The district court denied the doctor's motion for summary judgment. *Id.*

{29} The applicable statute in *Peralta* was Section 23-1-8 (now codified at Section 37-1-8), the same statute at issue in *Roybal.* *Peralta,* 90 N.M. at 392, 564 P.2d at 195; *see Roybal,* 72 N.M. at 286, 383 P.2d at 251. The *Peralta* Court declined to apply the Roybal rule, holding that *Roybal* misstated the law as to when Section 23-1-8 began to run. *Peralta,* 90 N.M. at 392-93, 564 P.2d at 195-96 ("[T]he *Roybal* holding is not a correct statement of when the limitation period begins to run.... *Roybal* conflicts with *Kilkenny [v. Kenney,* 68 N.M. 266, 361 P.2d 149 (1961) ], yet *Roybal* relies on *Kilkenny* as authority[.]"). *See generally Kilkenny,* 68 N.M. at 270, 361 P.2d at 151 (holding that, under Section 23-1-8, the statute runs "three years from the date of the injury"). Rather, *Peralta* held that "the limitation period begins to run from the time the injury manifests itself in a physically objective manner and is ascertainable." *Peralta,* 90 N.M. at 394, 564 P.2d at 197 (emphasis omitted).

{30} However, the *Peralta* Court stated that its manifestation and ascertainable rule was not "the 'discovery' rule." *Id.; see also Loesch v. Henderson,* 103 N.M. 554, 555, 710 P.2d 748, 749 (Ct.App.1985) ("New Mexico does not have a discovery rule."). The only attempt the majority in *Peralta* made to clarify its statement that it was not adopting a discovery rule was to discuss an out of state case, stating that "[i]n *Layton,* [ ] the limitation period did not run from 'discovery' of the hemostat in 1966, the limitation period was held to run from 1965 'when the plaintiff first experienced pain caused by the unknown foreign object.'" *Peralta,* 90 N.M. at 394, 564 P.2d at 197 (citing *Layton v. Allen,* 246 A.2d 794 (Del.1968)). The *Peralta* Court then held that because the doctor did not

show that the presence of the cottonoid could have been discovered before the date of the second surgery, the doctor had not shown that the injury had manifested itself and was ascertainable prior to that date; thus the doctor's motion for summary judgment was properly denied by the district court. *Id.*

{31} Four years later, in 1981, this Court applied the Peralta rule to Section 41-4-16(A), the claims notice provision of the Tort Claims Act. *Emery,* 96 N.M. at 149, 628 P.2d at 1145; *see* § 41-4-16(A). In *Emery,* the plaintiffs claimed medical malpractice as the cause of brain damage suffered by their child shortly after the child's birth. 96 N.M. at 146, 628 P.2d at 1142. The defendant asserted that the mother was informed of the malpractice on March 2, 1979, but the plaintiffs contended they were not informed that the child definitely had brain damage and that the brain damage was related to the act of malpractice until January 24, 1980. *Id.* at 148, 628 P.2d at 1144. The parents gave notice on February 29, 1980. *Id.* The defendant contended that the act of malpractice was the "occurrence" under Section 41-4-16(A), and that the plaintiffs' claim was barred because notice was not given within ninety days of that date. *Emery,* 96 N.M. at 148, 628 P.2d at 1144.

{32} Viewing *Peralta* as applicable precedent, the *Emery* Court determined that "there was no occurrence giving rise to a claim until [the child's] injury manifested itself in a physically objective manner and was ascertainable" and the evidence on summary judgment "show[ed] this to be a question of fact." *Emery,* 96 N.M. at 149, 628 P.2d at 1145 (emphasis omitted). Because *Peralta* applied its rule to a statute of limitations, the Court in *Emery* held the Tort Claims Act claims notice requirement in Section 41-4-16(A) and the limitations provision in Section 41-4-15(A) were similar enough to each other that the *Peralta* manifestation-and-ascertainable rule should apply to the claims notice requirement. *Emery,* 96 N.M. at 149, 628 P.2d at 1145 (internal quotation marks omitted).

{33} In 1984 this Court addressed the question of whether the Peralta rule applied to Section 41-5-13. In *Irvine v. St. Joseph*

*Hospital, Inc.*, 102 N.M. 572, 574–75, 698 P.2d 442, 444–45 (Ct.App.1984), this Court held that the plain language of Section 41–5–13 precluded application of the Peralta rule because, while other statutes, including Sections 37–1–8 and 41–4–15(A), were worded in terms of injury, there was no such language in Section 41–5–13. The Court stated that it could "not read language into a statute that is not there." *Irvine*, 102 N.M. at 575, 698 P.2d at 445 (internal quotation marks and citation omitted).

{34} The next year the Supreme Court addressed the same question in *Kern v. St. Joseph Hospital, Inc.*, 102 N.M. 452, 697 P.2d 135 (1985). *Kern* held that the Peralta rule did not apply to Section 41–5–13 because (1) *Peralta* was decided under Section 37–1–8 rather than Section 41–5–13, and (2) Section 37–1–8 is distinguishable from Section 41–5–13 in that Section 37–1–8 refers to an injury, while Section 41–5–13 only refers to the act of malpractice. *Kern*, 102 N.M. at 455, 697 P.2d at 138. Our Supreme Court held that the plain language of Section 41–5–13 precluded resorting to construing the statute. *Id.*

{35} In 1986 this Court directly addressed the question of when the statute of limitations in the Tort Claims Act, Section 41–4–15(A), begins to run. The *Long* Court stated: "We have recognized that under the Tort Claims Act the limitation period commences when an injury manifests itself *and* is ascertainable, rather than when the wrongful or negligent act occurs." 105 N.M. at 191, 730 P.2d at 494. This Court then held that a genuine issue of material fact existed "on the question of whether the injury [decedent] suffered was physically manifest and ascertainable prior to her death" because of the lack of clarity as to when the condition resulting from the alleged act of malpractice became distinguishable from decedent's various other conditions. *Id.* at 192, 730 P.2d at 495. The Court in *Long* declined the defendants' request to apply the time of the negligent act rule to the Tort Claims Act's statutory limitations period by distinguishing *Kern*, on which the defendant "apparently" relied, as being decided in the context of the

Medical Malpractice Act. *Long*, 105 N.M. at 191, 730 P.2d at 494.

{36} In 1992 came *Roberts*, discussed earlier in this opinion, in which the Supreme Court expressly overruled *Roybal*, decided in 1963, and adopted the discovery rule in the context of Section 37–1–8. *Roberts*, 114 N.M. at 254, 256, 837 P.2d at 448, 450. *Roberts* relied on the analysis in *Peralta*. *Roberts*, 114 N.M. at 255, 837 P.2d at 449. Yet *Peralta* said it was not adopting the discovery rule, while *Roberts* adopted it. *Peralta*, 90 N.M. at 394, 564 P.2d at 197; *Roberts*, 114 N.M. at 256, 837 P.2d at 450. Our Supreme Court also favorably cited the rationale of *Chisholm v. Scott*, 86 N.M. 707, 709, 526 P.2d 1300, 1302 (Ct.App.1974), an accountant malpractice case, stating that "[a]lthough the plaintiff in a medical malpractice case may not require any special knowledge or training to know that she suffers from pain, in the absence of such knowledge or training, she may be unable to ascertain the cause of that pain, *i.e.*, the professional malpractice of a physician." *Roberts*, 114 N.M. at 256, 837 P.2d at 450. The *Peralta* cause of action accrued when "the injury manifests itself in a physically objective manner and is ascertainable." 90 N.M. at 394, 564 P.2d at 197. However, the *Roberts* Court stated the rule as "the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury *and its cause*." 114 N.M. at 257, 837 P.2d at 451 (emphasis added).

{37} Finally, in 1996 the Supreme Court decided *Cummings*, which again addressed the question of when Section 41–5–13 begins to run. *Cummings*, 1996–NMSC–035, ¶ 43, 121 N.M. 821, 918 P.2d 1321. The plaintiff argued that the Supreme Court should interpret the word "occurrence" in the statute as "a continuum encompassing both the act of malpractice and the resulting injury." *Id.* ¶ 52. As discussed earlier in this opinion, the Court held that the plain language of the statute established the date of the act of malpractice to be the only relevant factor. *Id.* ¶ 53. While technically *Cummings* did no more than reiterate the holdings of *Kern* and *Irvine*, the analyses, distinguishing between an "occurrence rule" and a "discovery rule,"

offered a new framework within which statute of limitations cases must be analyzed. *Cummings,* 1996–NMSC–035, ¶¶ 47–50, 121 N.M. 821, 918 P.2d 1321; *see also Kern,* 102 N.M. at 455, 697 P.2d at 138 ("The statute clearly starts to run from the time of the occurrence of the act giving rise to the cause of action. Since we find the meaning of this statute unambiguous, there is no need to resort to rules of construction."); *Irvine,* 102 N.M. at 574, 698 P.2d at 444 ("The statutory language is not ambiguous. The limitation period began to run from the date of the occurrence of the alleged malpractice.").

### 2. Analysis

█ {38} We do not glean from the foregoing case history any compelling precedent that necessarily controls the outcome in this case. While *Roberts* is an important case, we do not read it in the all-encompassing manner which Plaintiff urges, that *Roberts* adopted the discovery rule in all medical malpractice cases not involving non-qualified healthcare providers. Nothing in *Roberts* requires us to conclude that the discovery rule must be applied when Section 41–4–15(A) is raised as a bar to a medical malpractice claim under the Tort Claims Act.

{39} In addition, the Tort Claims Act cases have gone no further than to follow the Peralta rule. Under the language of *Peralta,* the rule would be that the statute begins to run when a plaintiff first feels pain, as Defendant argues. While *Emery* and *Long* can reasonably be read to apply the Peralta rule in the same manner as the discovery rule adopted in *Roberts,* as Plaintiff argues, they avoid any mention of the discovery rule. *Roberts* was influenced by the Peralta rule but appears to have passed over it for the discovery rule. *See Roberts,* 114 N.M. at 256–57, 837 P.2d at 450–51. Further, although *Roberts* might arguably be read as transforming the Peralta rule into the discovery rule, no case, including *Roberts,* expressly dispels the notion expressed in *Peralta* and *Loesch* that the Peralta rule is not the discovery rule. For these reasons, we find Defendant's argument, that under the Peralta rule the statute begins to run when the act injuring the plaintiff occurs, a credible one.

{40} To us this case hinges on the plain language and the purposes underlying the Tort Claims Act. *See Clark v. Lovelace Health Systems, Inc.,* 2004–NMCA–119, ¶ 14, 136 N.M. 411, 99 P.3d 232 ("When language in a statute enacted by the legislature is unambiguous, we apply it as written, and any alteration of that language is a matter for the legislature, not for this Court."). We believe it paramount that the Tort Claims Act cases do not engage in a discussion of the plain language of or the purposes underlying the Tort Claims Act statutory scheme. Neither do they engage in a discussion of legislative intent. Nor did the Court in any of these cases have the Supreme Court's analyses in *Cummings* at hand.

{41} When set against the Roybal rule, which was the rule in existence when the Tort Claims Act and Medical Malpractice Act were enacted, the virtually unmistakable conclusion is that the Legislature was codifying the Roybal rule into Sections 41–4–15(A) and 41–5–13. The Roybal rule was that "a cause of action ... ˊaccrue[d] at the time of the *wrongful act causing the injury.*" *Roybal,* 72 N.M. at 287, 383 P.2d at 252 (emphasis added). Section 41–4–15(A) reads, *"occurrence resulting in loss, injury or death."* (Emphasis added.) It is reasonable to conclude that the focus in *Roybal* and the focus of the Legislature in enacting Section 41–4–15(A) was on the wrongful act and its occurrence, not on the injury caused or the resulting injury.

{42} Moreover, the similarities between Sections 41–4–15(A) and 41–5–13 cannot be ignored. Section 41–5–13 reads "after the *date that the act of malpractice occurred.*" (Emphasis added.) The unmistakable focus under Section 41–5–13 is on the act of malpractice. *See Cummings,* 1996–NMSC–035, ¶ 52, 121 N.M. 821, 918 P.2d 1321 (stating that the "focus" of the term "occurred" in Section 41–5–13 "is on the act without regard to its consequences"). The reason for the Legislature to clearly single out one type of act stems from the fact that Section 41–5–13, unlike Section 41–4–15(A), only concerns one possible claim, namely, that based on medical malpractice, so it did not have to add words such as "causing" or "resulting in," since the

only act or occurrence for which there could be liability was an act of medical malpractice. On the other hand, Section 41–4–15(A) required the additional words, "resulting in loss, injury or death," because the claims allowed under the Tort Claims Act are not limited to only one such as in the Medical Malpractice Act. However, the focus of Section 41–4–15(A) is nonetheless on the act causing the injury; just as in the medical malpractice context the act is the act of malpractice. *See* § 41–4–15(A). Thus, despite the difference in language between Sections 41–5–13 and 41–4–15(A), the analyses in *Cummings* that caused the Court to hold Section 41–5–13 to be an occurrence rule, and a statute of repose can reasonably be applied, and, we believe, is appropriately applied to support the same conclusion in regard to Section 41–4–15(A). Further, the analyses and results in *Emery* and *Long* were not signals to the Legislature that Section 41–4–15(A) was a discovery rule, so it cannot be argued that the Legislature's failure to amend the language of that statute means that it acquiesced in such an interpretation.

{43} We do not completely discount the fact that *Long,* a Tort Claims Act case, decided under Section 41–4–15(A), appears to have read the Peralta rule to apply in the nature of the discovery rule. Nor do we completely discount the fact that our courts have favored application of the discovery rule because of its reasonableness and fairness. Judicial tolling was properly at work when this Court moved from the time of the negligent act rule to the Peralta rule in applying Sections 41–4–15(A) and 41–4–16(A) in *Emery* and *Long.* Judicial tolling was also properly at work in *Roberts* when our Supreme Court applied the discovery rule to Section 37–1–8. These circumstances cannot be ignored.

{44} Nevertheless, in view of the language of Section 41–4–15(A), likely legislative intent, the historical context in which it was enacted, the unclear development of the Peralta rule, and our Supreme Court's analyses and holding in *Cummings,* we question the viability of this Court's apparent application of the Peralta rule as a discovery rule in prior Tort Claims Act cases. *See Long,* 105 N.M. at 192, 730 P.2d at 495; *Emery,* 96 N.M. at 149, 628 P.2d at 1145. We are reluctant in the face of *Cummings* to invoke the next step of judicial tolling, which would be to integrate the discovery rule into Section 41–4–15(A). The *Cummings* analyses, when applied to the question here, and the apparent intent of the Legislature when enacting Section 41–4–15(A) to conform to the Roybal rule then in existence to make the act (occurrence) causing (resulting in) injury (loss, injury, or death) the focus rather than the cause or the resulting injury as the focus, are constraints within which we feel bound.

**The Dissent**

{45} The dissent essentially says that the district court and the majority are both right, each for the wrong reason. The dissent sets out what it believes is or should be the right reason: that the discovery rule, not the occurrence rule, applies, and that New Mexico case law requires the discovery rule to be applied to bar a plaintiff's Tort Claims Act medical malpractice claim if the plaintiff first discovers or should discover the injury's cause in time to file an action within two years from the date of the injury. The dissent believes, as well, that the parties' positions and arguments did not raise the issues that the majority has addressed in this Opinion. The dissent raises points that require a recitation of background not needed earlier and a short discussion about the dissent's view of the discovery rule.

**1. The Issues Addressed Were Raised and the Issues Should Be Addressed**

{46} The issue below was whether Section 41–4–15(A) was tolled beginning May 17, 1999, and did not begin to run until discovery of the injury and its cause in August 2000. That is the issue on appeal. The issue is not whether, under the discovery rule, Plaintiff cannot obtain relief because she had time to file her action within two years of May 17, 1999, the date of death. In our view, the issue on appeal cannot be reasonably addressed and resolved without analyses of New Mexico case law on the meaning and application of three rules, namely: (1) the manifestation/ascertainable rule developed and applied in *Peralta, Long,* and *Emery;* (2)

the discovery rule adopted in *Roberts;* and (3) the occurrence rule described and applied in *Cummings.*

{47} The proceedings below are important to review. Plaintiff appealed the court's grant of Defendant's motion for summary judgment. Defendant's memorandum in support of his motion for summary judgment set out one argument only: that Section 41-4-15 barred Plaintiff's action because the two-year period commenced when the injury manifested itself, and the injury for which Plaintiff sought compensation became manifest on May 17, 1999, the date of decedent's death. Plaintiff responded, arguing that *Peralta, Long,* and *Emery* supported her position that the injury did not manifest itself and was not ascertainable until at least August 2000. Defendant's reply repeated what he stated in his original memorandum, arguing *Peralta, Long,* and *Emery* to support his position. Oral argument on the summary judgment issue did not change the issue. The district court granted summary judgment because information about chlorine was in the EMT/paramedic records Plaintiff obtained in August 2000 and because those records were in existence and discoverable by Plaintiff on May 17, 1999. The court's reasoning was:

> Okay. The entry [sic—injury] did manifest itself when she died. The EMT record was available the very same day. So I agree with [Defendant], the statute of limitations under the Tort Claims Act commenced to run on the day she passed away. It may have taken you a couple of years to find out why she died, but the records weren't concealed. They were there. Nobody bothered to check with the EMT, for whatever reason. And I'm not saying anybody was wrong in not doing that, but the records were there. The minute the EMT made the record, everybody knew chlorine was mentioned.

The court did not move beyond that reasoning in denying Plaintiff's motion for reconsideration.

{48} It is very clear that Defendant's motion for summary judgment raised one issue, and the court granted the motion based on that one issue: whether the date the statute of limitations began to run was May 17, 1999, or in August 2000. The district court held that the injury "manifested itself" on May 17, 1999, when the decedent died and therefore began to run on that date. The court did not discuss the question of whether the injury was also "ascertainable" on May 17, 1999; nor did the court discuss whether Plaintiff knew or should have known of the cause of injury on that date. The court, in fact, left it to Plaintiff to discover the cause of injury later on. The court's holding begged the question whether the correct law was applied to the facts.

{49} On appeal, Plaintiff argues that the Medical Malpractice Act statute of repose begins to run when the negligence occurred, but that under the Tort Claims Act statute of limitations the discovery rule applies and the statute begins to run when the injury manifests itself and is ascertainable as expressed in *Long* and *Emery.* She expressly argues that "the question is whether the statute of limitations in the Tort Claims Act is a statute of repose, as is the statute in the Malpractice Act, or does it run on discovery of the injury and its cause, as in *Roberts?*" She also seeks a determination of judicial tolling under the *Roberts* discovery rule. She argues that *Roberts* adopted the discovery rule in "all medical malpractice cases that do not come under the Malpractice Act." Significantly, Plaintiff specifically cited *Cummings* in her docketing statement, stating:

> There are two basic standards to determine the beginning of the time period in which a patient must file a claim for malpractice. One is the occurrence rule and applies to claims against qualified health care providers who come under the protection of the Medical Malpractice Act. The occurrence rule is, in effect, a statute of repose and was passed by the legislature in order to stem the flood of medical malpractice cases. The other standard is the discovery rule. The time period under this rule does not begin to run until the patient discovers, or reasonably should discover, the essential facts of her cause of action.

Plaintiff also raised and discussed *Cummings* and the occurrence rule in her brief in chief on appeal.

{50} Defendant, on appeal, argues that under the Tort Claims Act the suit must be filed within two years of the date of the occurrence resulting in the injury or death, and that the discovery rule does not apply. Defendant argues that "the cases in which Section 41–4–15(A) has been interpreted have not demonstrated an inclination to apply the discovery rule in Tort Claims Act cases." Defendant's position is that only "the event resulting in harm or injury" is the trigger, and that "[t]o apply the discovery rule to claims governed by Section 41–4–15(A) would require the court to read into that Section a causation component that is neither express nor reasonably implied from the language."

{51} Plaintiff combines the *Long* and *Emery* manifestation/ascertainable rule with the *Roberts* discovery rule. Defendant separates the *Long* and *Emery* rules from the discovery rule and contends the *Long* and *Emery* rules limit "discovery" to injury and not causation, and the discovery rule does not apply. The district court appears to have accepted Defendant's argument. The mixture and apparent misunderstanding below of legal precedents and concepts, and the manner in which the judgment appealed was presented to this Court, caused us to address the issues in the manner we have in this Opinion. *See infra* ¶¶ 2–3. We believe that this case does raise and require us to address the panoply of issues and authorities relating to the manifestation/ascertainable rule, the discovery rule, and the occurrence rule, calling for clarity and application of the various doctrines and analyses in *Peralta, Long, Emery, Roberts,* and *Cummings.*

## 2. The "More Nuanced" Discovery Rule

{52} We understand the discovery rule as it has been applied in New Mexico to be that, when the rule is applied, the statute of limitations is tolled and the cause of action accrues and does not start to run until discovery of the injury and its cause. This is what the cases applying or discussing the discovery rule say. *See Cummings,* 1996–NMSC–035, ¶ 47, 121 N.M. 821, 918 P.2d 1321 (stating that under the discovery rule "[t]he time period ... does not begin to run until the patient discovers, or reasonably should discover, the essential facts of his or her cause of action"); *Roberts,* 114 N.M. at 255, 257, 837 P.2d at 449, 451 (stating that under the discovery rule "the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists," and further that "the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause"). We do not understand the discovery rule to be that tolling and the start of the running of the statutory period do not occur if the plaintiff's diligent discovery of cause occurs nine months before the two-year period from the date of death.

{53} The dissent cites *Martinez v. Showa Denko, K.K.,* 1998–NMCA–111, ¶¶ 22–25, 125 N.M. 615, 964 P.2d 176, as a case in which the dissent's analysis occurred. We do not read *Martinez* to modify the discovery rule. As we read the holding in *Martinez,* the law requires a plaintiff to diligently investigate the cause of a medical problem and then to bring a legal action within the statutory period once it began to run after tolling. The plaintiff discovered information in late 1989 or early 1990, and she filed her action in 1996. *Id.* ¶¶ 10, 22–23. The plaintiff discovered the injury and its cause sufficiently in time to file her cause of action within three full years of the discovery, but she did not file until almost six years after discovery. *Id.* ¶ 25.

{54} We do not necessarily quarrel with the idea that the discovery rule as it was adopted and has been defined in New Mexico law perhaps should be modified. If the discovery rule, and not the occurrence rule, is ultimately determined by our Supreme Court to apply in this case, the importance of the dissent is that it may assist in obtaining clarification by our Supreme Court of statute of limitations, discovery rule jurisprudence.

## CONCLUSION

{55} We interpret the rule in Section 41–4–15(A) to be an occurrence rule, not a discovery rule. We therefore affirm the district court's summary judgment.

{56} **IT IS SO ORDERED.**

I CONCUR: RODERICK T. KENNEDY, Judge.

MICHAEL D. BUSTAMANTE, Judge (specially concurring in part and dissenting in part).

BUSTAMANTE, Judge (specially concurring in part and dissenting in part).

{57} I concur in the result of the majority Opinion because I believe the district court correctly decided that the Tort Claims Act statute of limitations expired as a matter of law before Plaintiff filed her claim, but I cannot concur in its analytical approach or its holding.

{58} Relying on *Roberts,* Plaintiff makes the straightforward argument that the two-year statute began to run when she learned of the possibility of chlorine in the dialysis machinery. An equally straightforward response to this argument is that the discovery rule in New Mexico is not applied in this manner. A plaintiff is not allowed to simply tack on to the statutory limit the amount of time she takes to decide for herself what caused her injury. The discovery rule is a more nuanced instrument. Invoking equitable principles, the discovery rule is meant to relieve undue harshness in the application of statutes of limitation caused by lack of knowledge in the plaintiff that legal damage has or may have occurred. The potential reasons for a plaintiff's lack of knowledge are varied, ranging from latent diseases to professional malpractice events potentially beyond the ken of the lay person to fraudulent concealment of facts by defendants. *See Sawtell v. E.I. du Pont de Nemours & Co.,* 22 F.3d 248, 250 (10th Cir.1994) (detailing the types of cases in which some variant of the discovery rule has been applied).

{59} Except for the fraudulent concealment cases, New Mexico's approach to accommodating a plaintiff's lack of knowledge does not involve simply adding time as Plaintiff requests. *Juarez v. Nelson,* 2003–NMCA–011, ¶ 22, 133 N.M. 168, 61 P.3d 877 (holding that in fraudulent concealment cases, plaintiffs should be restored the amount of time lost as a result of the concealment). The inquiry rather involves whether the plaintiff knew, or with reasonable dili-

gence should have known, of the injury and its cause within the time frame of the applicable statute. *Roberts,* 114 N.M. at 257, 837 P.2d at 451. I believe that inquiry should be resolved as a matter of law against Plaintiff. Plaintiff was necessarily aware upon Ms. Varela's sudden death on May 17, 1999, that something had gone tragically wrong—she knew she had suffered an injury. Whether the death was caused by a blameworthy mistake, of course, could not be known with certainty as of that day. Given the obvious injury, however, the statute would normally start running immediately. Plaintiff knew about the potential causative agent nine months before the two-year statute expired. In the parlance of the discovery rule, Plaintiff knew everything she needed to know nine months before the statute expired. Nine months is, as a matter of law, not an unreasonable time for her to decide whether to file her claim. She did not, and the claim should be barred. I believe this is the analysis we followed to find that the plaintiff in *Martinez v. Showa Denko, K.K.,* 1998–NMCA–111, ¶¶ 22–25, 125 N.M. 615, 964 P.2d 176, was time-barred.

{60} My approach to the problem here depends on two premises. First, Plaintiff has not argued that anyone fraudulently concealed any information from her. Thus, the particular equitable concerns underlying cases such as *Juarez* are not present. Second, the bare fact that Plaintiff did not immediately have all the information she needed to ascribe blame—or to articulate a theory of malpractice as of May 1999—does not make it inherently unfair or improper to say that the statute started to run as of the date of Ms. Varela's death. This second premise in turn depends on whether in all cases the *Roberts* concern over knowledge of an "injury" should be considered separately from knowledge of "its cause." In cases of obvious injury, I do not think they need be. If any of these premises are not accurate, my conclusion is potentially, if not likely, wrong, and we should reverse so that the district court can determine whether the time lapse here was reasonable.

{61} The majority takes an approach not necessary to resolve the case and not even

argued by Defendant. The result is in my view an erroneous and radical reconstruction of the Tort Claims Act statute of limitations.

{62} The majority equates the Tort Claims Act statute to the Medical Malpractice Act statute of limitations. Thus, the Tort Claims Act is now an "occurrence" statute or a statute of repose which runs from a statutorily determined triggering event. Majority Opinion, ¶ 14. The majority achieves this result by drawing parallels between the two statutes and noting that they were passed in the same legislative session. I do not agree that use of the term "occurrence" in the Tort Claims Act is the functional equivalent of the phrase "the date that the act of malpractice occurred" in the Medical Malpractice Act. The policy rationale behind the Malpractice Act phrase—providing more underwriting certainty and predictability in order to better control insurance rates—is simply not present in the Tort Claims Act setting the same way.

{63} The majority makes much of the fact that the Tort Claims Act encompasses many sources of liability other than malpractice to explain the use of the term "occurrence" in the Act. Somehow, that difference is alchemized into evidence of parallelism with the Medical Malpractice Act. I think it actually argues against the majority's position. If the Legislature wanted to achieve the same aim in the Tort Claims Act—that is, create an occurrence statute—it would more likely and more effectively have used phrases such as "act of negligence" or "misconduct" rather than "occurrence."

{64} Finally, classifying Section 41-4-15(A) as an "occurrence" rule has consequences which the Opinion does not adequately address. First, under such a rule there is no excuse for any passage of time following the negligent act or act of misconduct, other than fraudulent concealment in some cases. As such, the Opinion should expressly overrule *Emery* and *Long* rather than gut them while benignly saying that "judicial tolling was properly at work" in these decisions. Second, what is the effect on cases involving missed diagnoses and latent injuries? If we are going to apply the Tort Claims Act statute as a true occur-

rence/repose provision, many of these cases will be foreclosed before they are discovered. I simply do not believe the Legislature intended that consequence in this context. My view is bolstered by the Legislature's failure to overturn *Emery* and *Long* by amendment of the Tort Claims Act.