2007-NMSC-003

152 P.3d 141

**Petra MAESTAS, as personal representative of the Estate of Betty Varela, and on behalf of Joe V., a minor, Plaintiff–Petitioner,**

v.

**Philip G. ZAGER, M.D., Dialysis Clinic, Inc., a foreign corporation, Deborah Bowen, Fresenius Medical Care, Inc., a foreign corporation, and John Doe # 1 and # 2, Defendants–Respondents.**

No. 28,997.

Supreme Court of New Mexico.

Jan. 23, 2007.

Benito Sanchez, P.A., Benito Sanchez, Albuquerque, NM, LeeAnn Ortiz Law Office, LeeAnn Ortiz, Albuquerque, NM, for Petitioner.

Felker, Ish, Ritchie & Geer, P.A., Mark L. Ish, Carol J. Ritchie, Santa Fe, NM, for Respondent Zager.

McGinn Carpenter Campbell Montoya & Love, Randi McGinn, Albuquerque, NM, Michael B. Browde, Albuquerque, NM, for Amicus Curiae The New Mexico Trial Lawyers Association.

**OPINION**

MAES, Justice.

{1} This appeal arises from a medical malpractice claim brought by Petitioner Petra Maestas, personal representative of the decedent, under the Tort Claims Act (TCA), NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2006). The trial court granted a summary judgment motion in favor of Respondent Dr. Philip G. Zager after determining that Petitioner's claim was barred by the statute of limitations within the TCA, Section 41–4–15(A) (1977). Petitioner appealed the granting of summary judgment to the Court of Appeals, which affirmed, holding that Section 41–4–15 is an occurrence rule that runs from the act of malpractice. We granted certiorari and address two issues: (1) when does the statute of limitations in the TCA, Section 41–4–15(A), begin to run; i.e., whether it constitutes an occurrence rule that runs from the act of malpractice or a discovery rule that begins to run when a plaintiff has discovered the relevant facts to establish a legal cause of action under the TCA; and (2) whether a genuine issue of material fact exists to preclude summary judgment in favor of Respondent. Because we find Section 41–4–15(A) is a discovery-based statute of limitations that accrues when a plaintiff knows or with reasonable diligence should have known of the injury and its cause, we reverse the Court of Appeals and remand to the district court for further proceedings to determine whether Petitioner exercised reasonable diligence in

discovering the cause of the decedent's injury.

**BACKGROUND**

{2} For the purposes of this appeal, the relevant facts are as follows. *See Maestas v. Zager*, 2005–NMCA–013, ¶¶ 4–9, 136 N.M. 764, 105 P.3d 317. Petitioner's sister, the decedent, was a patient at the Dialysis Clinic, Inc. The Dialysis Clinic (the Clinic) is a private facility that serves patients from the University of New Mexico School of Medicine (UNMH). Pursuant to a contract between the Clinic and UNMH, UNMH furnishes physicians to the Clinic. The Clinic physicians in this case, including Respondent, were employees of UNMH, a state agency. It is undisputed that Respondent was a state employee and therefore covered by the TCA.

{3} On May 17, 1999, the decedent was undergoing dialysis at the Clinic. During her treatment she began to experience serious difficulty breathing and was transported by EMT paramedics to Presbyterian Hospital, where she died shortly after her arrival. Petitioner was appointed personal representative of the decedent, and in October 1999, she hired counsel and obtained the autopsy report and findings from the Office of the Medical Examiner. Those documents attributed the decedent's death to angioedema (swelling) of the face, throat, and tongue caused by an allergic reaction to the prescription drug Lisinopril. The autopsy report also indicated that the investigation of the Clinic's dialysis equipment and fluids showed "no abnormalities in the tubing, machines, or compositions of the fluid," and the decedent's toxicology report contained nothing of significance. Petitioner also made an initial request for the Clinic's medical records in November or December 1999; however, because the cost of obtaining the records was $500, Petitioner did not follow up on that request until August 2000. Petitioner received the Clinic records in September 2000.

{4} In August 2000, Plaintiff received the reports of the EMT paramedics who transported the decedent from the Clinic to the hospital. It was these records that first evidenced the possibility of wrongdoing. The EMT record stated that an unidentified employee at the Clinic informed one of the EMT paramedics that the decedent may have experienced a reaction to chlorine in her blood due to contamination of the dialysis machine used on the decedent at the Clinic. Based on this information, Petitioner filed the present action against Respondent in March 2002, two years and ten months after the decedent's death.

{5} Respondent filed a motion for summary judgment based on the assertion that Petitioner's claim was barred by TCA Section 41–4–15(A), which requires the filing of a claim "within two years after *the date of occurrence resulting in loss, injury or death.*" (Emphasis added.) The district court granted Respondent's motion for summary judgment, finding that the TCA statute of limitations commenced to run on May 17, 1999, because the decedent's injury was manifest when she died and the EMT record was available on that date. *See Maestas*, 2005–NMCA–013, ¶ 9, 136 N.M. 764, 105 P.3d 317.

{6} Petitioner appealed the decision of the district court to the Court of Appeals. In their briefing to the Court of Appeals, Petitioner and Respondent agreed that under the settled law of New Mexico, a cause of action brought under Section 41–4–15(A) accrues only after the injury "manifests itself and is ascertainable." However, the parties differed on whether ascertainability required some indication that the injury may have resulted from some negligence by the government actor involved. Petitioner claimed that the statute does not begin to run until a plaintiff has some information relating the death to the conduct of the defendants, while Respondent argued that, for purposes of Section 41–4–15(A), an injury is ascertainable when it is certain that there is an injury. In its opinion, the Court affirmed the district court's grant of summary judgment in favor of Respondent, concluding that Section 41–4–15(A) is an " 'occurrence rule,' " *Maestas*, 2005–NMCA–013, ¶¶ 3, 55, 136 N.M. 764, 105 P.3d 317, that " 'fixes the accrual date at the time of the act of medical malpractice even though the patient may be oblivious of any harm.' " *Id.* ¶ 13 (quoting *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996–NMSC–035, ¶ 47, 121 N.M. 821, 918 P.2d 1321).

{7} In his special concurrence in *Maestas,* Judge Bustamante agreed with the majority that "the Tort Claims Act statute of limitations expired as a matter of law before Plaintiff filed her claim." *Id.* ¶ 57 (Bustamante, J., specially concurring in part and dissenting in part). However, Judge Bustamante characterized the majority's determination that Section 41–4–15(A) is an occurrence rule accruing from the time of the act of malpractice as "an erroneous and radical reconstruction of the [TCA] statute of limitations." *Id.* ¶ 61. Instead, Judge Bustamante described Section 41–4–15(A) as a discovery rule and stated that in medical malpractice cases brought under the TCA, "[t]he inquiry ... involves whether the plaintiff knew, or with reasonable diligence should have known, of the injury and its cause within the time frame of the applicable statute." *Id.* ¶ 59 (citing *Roberts v. Sw. Cmty. Health Servs.,* 114 N.M. 248, 257, 837 P.2d 442, 451 (1992)). He concluded that in cases of obvious injury, it is unnecessary to consider Plaintiff's knowledge of the cause of injury. *Id.* ¶ 60. Thus, "[g]iven the obvious injury" in this case, the statute of limitations started running on the date of the decedent's death and expired before Petitioner filed her claim. *Id.* ¶ 59. In light of the conflict between the majority's analysis and Judge Bustamante's special concurrence, we granted Petitioner's petition for writ of certiorari in order to clarify when a cause of action brought under TCA Section 41–4–15(A) accrues.

## DISCUSSION

### Standard of Review

{8} This case requires us to decide when the limitations period for an action for medical malpractice commences under the TCA. Because this case presents an issue of statutory interpretation and requires a determination of whether summary judgment was proper, our review is de novo. *See Rutherford v. Chaves County,* 2003–NMSC–010, ¶ 8, 133 N.M. 756, 69 P.3d 1199.

### Discovery vs. Occurrence

{9} In construing a statute, this Court will not depart from the plain language of the statute "unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Cobb v. State Canvassing Board,* 2006–NMSC–034, ¶ 34, 140 N.M. 77, 140 P.3d 498 (quoted authority omitted). "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *State v. Elmquist,* 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App.1992).

{10} The language of the statute in issue is ambiguous. Section 41–4–15(A) states: "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after *the date of occurrence resulting in loss, injury or death* ...." (Emphasis added.) The ambiguity within Section 41–4–15(A) stems from the fact that it encompasses two potentially disparate time frames (the date of the occurrence of the act of malpractice and the date of the resulting loss, injury, or death), without clarifying how to reconcile the two. Another way of framing this ambiguity is whether the statute of limitations under the TCA constitutes an occurrence rule running from the act of malpractice or a discovery rule that accrues when a plaintiff has discovered the relevant facts to establish a legal cause of action.

{11} In its opinion, the Court of Appeals reasoned that the plain language of Section 41–4–15(A) should be interpreted as an occurrence rule, accruing from the date of the act of malpractice, because "the temporal focus of Section 41–4–15(A) seems to be on the date of the occurrence rather than the loss, injury, or death." *Maestas,* 2005–NMCA–013, ¶ 20, 136 N.M. 764, 105 P.3d 317. We find that this analysis is erroneous for two reasons: first, the Court's interpretation of Section 41–4–15(A) fails to read the statute as a whole, and second, the Court's conclusion that Section 41–4–15(A) is an occurrence rule constitutes a drastic departure from established precedent.

{12} When construing a statute, we read the entire statute as a whole, considering provisions in relation to one another. *Cobb,* 2006–NMSC–034, ¶ 34, 140 N.M. 77,

158

140 P.3d 498. The Court of Appeals' reading of Section 41–4–15(A), however, gives no effect to the statutory language "occurrence resulting in loss, injury or death." *See Emery v. Univ. of N.M. Med. Ctr.*, 96 N.M. 144, 148, 628 P.2d 1140, 1144 (Ct.App.1981) ("Defendant's contention, that the 90–day notice provision runs from the 'occurrence', gives no effect to the statutory language—'occurrence giving rise to a claim'."). We cannot say that the temporal focus of Section 41–4–15(A) is merely on the date of occurrence, as there are two potentially different time frames implicated by the language of the statute, both the time of the occurrence and the time of the resulting loss, injury, or death. Contrast this language with that of Section 41–5–13 (1976), the occurrence rule of the Medical Malpractice Act (MMA), NMSA 1978, §§ 41–5–1 to –29 (1976, as amended through 1997). The MMA states that "[n]o claim for malpractice ... may be brought against a health care provider unless filed within three years after the *date that the act of malpractice occurred* ...." Section 41–5–13 (emphasis added); *see also Cummings*, 1996–NMSC–035, ¶ 52, 121 N.M. 821, 918 P.2d 1321 ("The term 'occurred' from the medical malpractice statute does not inquire into whether the act caused an injury, whether the injury is immediate or latent, whether the injury is discovered or not. The focus of this term is on the act without regard to its consequences."). The MMA's language plainly and unambiguously focuses on the act of malpractice. This clear singular temporal focus is not present in Section 41–4–15(A).

{13} Further, the Court of Appeals' conclusion that Section 41–4–15(A) is an occurrence rule constitutes a deviation from our precedent, which has consistently stated that the TCA statute of limitations commences when an "injury manifests itself *and* is ascertainable, rather than when the wrongful or negligent act occurs." *Long v. Weaver*, 105 N.M. 188, 191, 730 P.2d 491, 494 (Ct.App. 1986) ("We have recognized that under the Tort Claims Act the limitation period commences when an injury manifests itself *and* is ascertainable, rather than when the wrongful or negligent act occurs."); *see also Bolden v. Village of Corrales*, 111 N.M. 721, 721, 809 P.2d 635, 635 (Ct.App.1990) (holding that

under the TCA "the limitation period commences 'when an injury manifests itself *and* is ascertainable rather than when the wrongful or negligent act occurs' " (quoting *Long*, 105 N.M. at 191, 730 P.2d at 494)); *Emery*, 96 N.M. at 149, 628 P.2d at 1145 (holding that under the notice of claim provision of the TCA, notice was not required until the "injury manifested itself in a physically objective manner *and* was ascertainable"). These prior cases clearly instruct that the TCA statute of limitations is not an occurrence rule which "fixes the accrual date at the time of the act of medical malpractice even though the patient may be oblivious of any harm." *Cummings*, 1996–NMSC–035, ¶ 47, 121 N.M. 821, 918 P.2d 1321. Therefore, our courts have consistently held that the limitations period runs not from the act of medical malpractice, but from the time when the resulting injury manifests itself in a physically objective manner and is ascertainable.

{14} Our analysis next focuses on how to interpret the phrase "manifests itself in a physically objective manner and is ascertainable." This language was first used by a New Mexico Court in *Peralta v. Martinez*, 90 N.M. 391, 394, 564 P.2d 194, 197 (Ct.App. 1977). In *Peralta*, the Court of Appeals "considered a statute of limitations that began to run from the 'injury' and held that the limitation period began to run 'from the time the injury manifests itself in a physically objective manner *and* is ascertainable.' " *Emery*, 96 N.M. at 148–149, 628 P.2d at 1144–1145 (quoting *Peralta*, 90 N.M. at 394, 564 P.2d at 197). In so holding, the *Peralta* Court stated that the phrase "manifests itself in a physically objective manner *and* is ascertainable" did not constitute a discovery rule. *Peralta*, 90 N.M. at 394, 564 P.2d at 197. However, this language clearly does not describe an occurrence rule, which fixes the accrual date at the time of the act of medical malpractice. To the contrary, the *Peralta* Court stated that "there is no cause of action for malpractice until there has been a resulting injury." *Id.* at 393, 564 P.2d at 196.

{15} This Court interpreted the *Peralta* decision in *Roberts*, 114 N.M. at 250–55, 837 P.2d at 444–49. In *Roberts*, we examined the

question of when a cause of action for medical malpractice accrues under the personal injury statute of limitations, NMSA 1978, § 37–1–8 (1976), which "bars actions that are not brought within three years of the accrual of the cause of action." *Roberts*, 114 N.M. at 252, 837 P.2d at 446. The plaintiff in *Roberts* had surgery in 1984 and for the next four years experienced medical problems and abdominal pain. *Id.* at 249, 837 P.2d at 443. In January 1989, the plaintiff learned that her pain was caused by a sponge that had been left in her abdomen during the 1984 surgery, and she consequently had the sponge removed. *Id.* More than five years after the act of malpractice occurred, the plaintiff filed a cause of action against the defendant, who was not covered by the MMA. *Id.* In determining whether the plaintiff's claim was time-barred by the personal injury three-year statute of limitations, the Court found the reasoning of *Peralta* persuasive and held that when a medical malpractice cause of action is brought under the personal injury statute, an occurrence rule does not control. *Id.* at 254–55, 837 P.2d 442, 837 P.2d at 448–49 (concluding that the "time of the negligent act rule" no longer retains its vitality). The Court in *Roberts* not only declined to adopt an occurrence rule, but also went further than merely adopting the language of *Peralta.* The *Roberts* Court decided that in medical malpractice cases brought under the personal injury statute, a discovery rule controls, *id.* at 256, 837 P.2d at 450, and "the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Id.* at 257, 837 P.2d at 451.

{16} In the present case, Petitioner asserts that our decision in *Roberts* changed the landscape of medical malpractice cases, and that any claim brought outside the MMA should accrue when the plaintiff knows of both the injury and its cause. Petitioner also suggests that *Roberts* created a dichotomy between individuals who are qualified under the MMA and all other medical malpractice defendants. Petitioner argues that because Respondent is not a qualified healthcare provider under the MMA, the discovery rule set forth in *Roberts* should control.

{17} Respondent counters that our decision in *Roberts* did not create a dichotomy between qualified health care providers under the MMA and all other malpractice defendants. Respondent asserts that the discovery rule outlined in *Roberts* should not control the outcome of this case because Petitioner's claim is covered by the TCA, and *Roberts* was decided under the personal injury statute of limitations, Section 37–1–8. Respondent urges this Court to follow the precedent established in *Emery, Long,* and *Bolden* and hold that a claim brought under the TCA accrues when the injury is manifest and ascertainable. Respondent argues that under this rule, Petitioner's claim accrued at the date of death because on that date the injury was both manifest and ascertainable.

{18} While we do not agree with Petitioner's assertion that *Roberts* created a dichotomy between qualified healthcare providers covered by the MMA and nonqualified providers, we agree that the discovery rule described in *Roberts* should control the outcome of this case. We find the reasoning set forth in *Roberts* persuasive and applicable to the instant case. The plaintiff in *Roberts* began to experience pain immediately after the negligent act. However, she did not discover the cause of her pain for almost four years after the negligent act. Similarly, in this case, decedent's pain and death occurred immediately after the alleged negligent act. The alleged cause of decedent's death, however, was not discovered for more than a year. The *Roberts* Court determined that in medical malpractice cases where a victim is unable to ascertain the cause of injury, the cause of action for medical malpractice does not accrue until "the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Roberts,* 114 N.M. at 257, 837 P.2d at 451. The Court reasoned that a plaintiff should not be punished for " 'blameless ignorance' by holding a medical malpractice action time-barred before the plaintiff reasonably could know of the harm he has suffered." *Id.* at 256, 837 P.2d at 450 (quoted authority omitted).

{19} We see no significant distinction between the facts of *Roberts* and the facts of the instant case. In *Roberts* we recognized

that the sensation of pain does not necessarily provide the average person with relevant information about an injury. The victim of medical malpractice is in a vulnerable position and should not be punished for his or her lack of medical expertise. "Although the plaintiff in a medical malpractice case may not require any special knowledge or training to know that she *suffers* from pain, in the absence of such knowledge or training, she may be unable to ascertain the *cause* of that pain . . . ." *Id.* (emphasis added). The disparity between doctors and patients places a duty on the law "to protect the patient from injury caused by a negligent act of a physician." *Id.* at 257, 837 P.2d at 451. Included within that duty is an obligation to ensure that a person of "ordinary diligence" has an "adequate period of time" to "pursue his claim." *Id.* at 256, 837 P.2d at 450 (quoted authority omitted). These principles of fairness which informed our decision in *Roberts* should dictate the outcome of this case. We hold that medical malpractice cases brought under Section 41–4–15(A) are controlled by a discovery rule and the cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause.

{20} This decision to adopt a discovery rule is supported by this Court's decision in *Cummings,* 1996–NMSC–035, ¶ 47, 121 N.M. 821, 918 P.2d 1321. In *Cummings,* this Court identified "[t]wo basic standards [that] determine the beginning of the time period in which a patient must file a claim for medical malpractice." *Id.* The standards identified by this Court in *Cummings* were the "discovery rule" and the "occurrence rule." *Cummings* indicates that all cases for medical malpractice must be controlled by either a discovery rule or an occurrence rule. When the *Cummings* Court described these two mutually exclusive rules, it made the language "manifest and ascertainable" employed in *Emery, Long,* and *Bolden* obsolete. As we have discussed, the manifest and ascertainable rule is not an occurrence rule, because this rule does not fix "the accrual date at the time of the act of medical malpractice." *Id.* However, this language cannot be considered a discovery rule because the Court in *Peralta* explicitly stated it was "not the 'dis-covery' rule." *Peralta,* 90 N.M. at 394, 564 P.2d at 197. Thus, the *Peralta* rule is a middle ground that was made irrelevant in medical malpractice cases by this Court in *Cummings.* Because the TCA cannot be interpreted as an occurrence rule for the reasons we discussed, we apply the *Roberts* discovery rule.

{21} We clarify that the discovery rule we have adopted does not require the plaintiff to discover that the defendant's actions constitute medical malpractice. Although Petitioner urges this Court to find that her cause of action did not accrue until she had some indication of Respondent's negligence, we cannot agree. Our holding is consistent with the path taken by the United States Supreme Court in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick,* the Court held that a claim for medical malpractice accrues when the plaintiff knows of both the existence and cause of his injury, *id.* at 122, 100 S.Ct. 352, and not when the plaintiff knows that the acts inflicting the injury might constitute medical malpractice. *Id.* at 123, 100 S.Ct. 352 ("We thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted."); *see also Emery,* 96 N.M. at 149, 628 P.2d at 1145. A plaintiff's discovery of relevant facts is distinct from his or her discovery of legal rights. *Coslett v. Third St. Grocery,* 117 N.M. 727, 735, 876 P.2d 656, 664 (Ct.App.1994) (" 'The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action. Were the rule otherwise, the discovery rule would postpone accrual in every case until the plaintiff consults an attorney.' " (quoting *Allen v. State,* 118 Wash.2d 753, 826 P.2d 200, 203 (1992) (en banc))).

{22} Additionally, a cause of action brought under Section 41–4–15(A) will accrue regardless of whether or not the plaintiff is aware of the full extent of his or her injury. *See Bolden,* 111 N.M. at 722, 809 P.2d at 636.

Once a plaintiff has discovered his or her injury and the cause of that injury, the statute of limitations begins to run. "It is not required that all the damages resulting from the negligent act be known before the statute of limitations begins to run." *Id.* Also, the statute of limitations will not be tolled because the plaintiff has received divergent medical opinions among physicians concerning the cause of his or her injury. *Martinez v. Showa Denko, K.K.,* 1998–NMCA–111, ¶ 24, 125 N.M. 615, 964 P.2d 176 ("[I]f 'the plaintiff knows or should have reasonably known of the general nature and extent of an injury, the running of a statute of limitations is not delayed if there are differing medical opinions regarding whether the plaintiff has incurred a particular medical condition.'" (citation omitted)). A plaintiff's cause of action accrues when he or she understands the nature of his or her injury; that is, when the plaintiff knows or with reasonable diligence should have known of the injury and its cause.

**Application of Discovery Rule**

{23} Finally, we must apply the TCA statute of limitations to the facts of the instant case in order to determine whether the trial court's grant of summary judgment was appropriate. As we have stated, an action for medical malpractice brought under the TCA accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause. In his dissent, Judge Bustamante articulated this same discovery rule; however, he concluded that Petitioner's cause of action accrued on the date of death because Petitioner "was necessarily aware upon [decedent's] sudden death on May 17, 1999, that something had gone tragically wrong-she knew she had suffered an injury." *Maestas,* 2005–NMCA–013, ¶ 59, 136 N.M. 764, 105 P.3d 317. However, this is not a correct interpretation of the discovery rule we have adopted. While there may be cases where death alone triggers the running of the TCA statute of limitations, those cases are limited to instances when the plaintiff knows at the time of death the nature of the injury, including the cause of injury. In contrast, in this case, it did not appear at first that there was any cause of death other than an allergic reaction. The autopsy report that was received in the fall of 1999 supported this conclusion, and there was nothing in the autopsy report to indicate any chlorine contamination. It is possible that a jury would find that these facts could have legitimately caused Petitioner and her attorney to be less than urgent about pursuing further investigation. Whether Petitioner exercised reasonable diligence as required by the discovery rule is a factual question that must be determined by the jury. *Williams v. Stewart,* 2005–NMCA–061, ¶ 16, 137 N.M. 420, 112 P.3d 281, *cert. denied,* 2005–NMCERT–005, 137 N.M. 522, 113 P.3d 345; *see also Kern ex rel. Kern v. St. Joseph Hosp., Inc.,* 102 N.M. 452, 456–57, 697 P.2d 135, 139–140 (1985) (indicating that when there are genuine issues of material fact regarding when a statute of limitations begins, such questions are "ordinarily for determination by the finder of fact").

{24} Other factual considerations that may impact a jury's determination of whether Petitioner exercised reasonable diligence in identifying the cause of death include the reason Petitioner and her lawyer failed to obtain the reports of the EMT prior to August 2000. As the district court pointed out at the hearing on Respondent's motion for summary judgment, the EMT records were available from the date of death, and Petitioner gave no explanation for the delay of more than one year in obtaining them. It would not be unreasonable for a jury to infer that this protracted delay was a result of Petitioner's failure to exercise reasonable diligence. Also, while we do not find the fact that Petitioner hired an attorney to be dispositive, this fact may persuade a jury that Petitioner, through her attorney, was not diligent in discovering the cause of her sister's death.

{25} We leave it to a jury to determine what inferences regarding Petitioner's reasonable diligence may be drawn from the facts of this case. Because we determine that the issue of reasonable diligence in this case is a factual question for a jury, we hold that summary judgment for Respondent was

improperly granted. *See Kern ex rel. Kern,* 102 N.M. at 456–57, 697 P.2d at 139–140.

**CONCLUSION**

{26} We reverse the Court of Appeals' conclusion that the TCA statute of limitations is an occurrence rule and clarify that the discovery rule as applied to the TCA requires that a cause of action accrues when the plaintiff knows or with reasonable diligence should have known of the injury and its cause. Because a factual question remains regarding Petitioner's exercise of reasonable diligence, we reverse the district court's grant of summary judgment and remand with instructions for further proceedings consistent with this opinion.

{27} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, RICHARD C. BOSSON, Justices, and LYNN PICKARD, Judge, New Mexico Court of Appeals (sitting by designation).