2007-NMCA-147

172 P.3d 168

**BARRINGTON REINSURANCE LIMITED, LLC, Plaintiff–Appellee,**

v.

**FIDELITY NATIONAL TITLE INSURANCE COMPANY, Defendant–Appellant.**

No. 26,777.

Court of Appeals of New Mexico.

Sept. 18, 2007.

Law Offices of Nicholas R. Gentry, L.L.C., Nicholas R. Gentry, Albuquerque, NM, for Appellee.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Angelo J. Artuso, Albuquerque, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} The sole question in this appeal relates to the interpretation of NMSA 1978, § 59A–30–11(A) (1999), the amended statute dealing with the duty of a title insurer or its agent to conduct "a reasonable search and examination of the title" before issuing a title policy. The parties in this case question the application of the amended language to other duties arising under the common law or other statutes. We conclude that Section 59A–30–11(A) does not bar a claim against a title insurer or its agent that is based on a duty other than the duty specified in the statute, that of reasonable care in conducting a title search. Accordingly, we affirm the trial court's order.

## I. BACKGROUND

{2} The relevant facts are undisputed. The parties' disagreement arises out of the following events. Nonparty Brent M. Freeze acquired two lots, Lot 8 and Lot 9, from nonparty Andrew L. Turner. When Freeze acquired the two lots, he obtained a title insurance policy from Defendant–Appellant, Fidelity National Title Insurance Company (Fidelity). The title search performed prior to issuing the policy did not reveal any restrictive covenants on the two lots; conse-quently, the policy did not indicate the existence of any restrictions.

{3} Two months later, Freeze deeded Lots 8 and 9 to Plaintiff–Appellee, Barrington Reinsurance Limited (Barrington). Freeze and Barrington retained Fidelity to act as closing agent, to provide advice, and to prepare documents in regard to the transfer of Lots 8 and 9. Barrington told Fidelity that Barrington intended to sell Lot 8 and Lot 9 separately. Subsequently, during the course of the transfer, Fidelity made various affirmative representations to Barrington, including the following: (1) Fidelity had performed previous title searches on Lots 8 and 9, and the title "was good and clear"; and (2) Barrington did not need to obtain title insurance because the title to the property was "good" and because Barrington was protected by the policy issued to Freeze.

{4} A few months later, Barrington entered into a contract to sell Lot 8 for $480,000 and retained Fidelity to act as closing agent. At that time, Fidelity performed another title search on Lot 8 in order to issue a title policy to the prospective buyer. During this title search, Fidelity discovered a recorded agreement that had been overlooked in Fidelity's previous title search. The agreement provided that Lot 8 and Lot 9 could not be sold separately and that only one house could be built on the two lots. One house already existed on Lot 9. As a result, Barrington could not sell Lot 8 to the prospective buyer.

{5} After discovering the agreement, Fidelity acknowledged that it had made a mistake and promised to fix the problem. When Fidelity failed to solve the problem, Barrington filed suit and asserted four claims: negligence; negligent misrepresentation; breach of implied or constructive contract; and unfair, deceptive, or unconscionable trade practice. In the complaint and on appeal, Barrington asserts that it relied on the oral representations made by Fidelity in regard to the transfer of Lots 8 and 9 from Freeze to Barrington and, in so doing, did not obtain title insurance.

{6} Fidelity, relying solely on the language of Section 59A–30–11(A), moved for summary

judgment on all four of Barrington's claims and argued that the amended language of the statute barred recovery for any claim arising from an alleged defect in the title search. The trial court agreed that Section 59A–30–11(A) barred recovery on the negligence claim and therefore granted Fidelity's motion for summary judgment as to Count I. Based on the conclusion that the amended statute did not apply to Barrington's remaining claims, the court denied Fidelity's motion as to Count II, negligent misrepresentation; Count III, breach of implied or constructive contract; and Count IV, unfair, deceptive, or unconscionable trade practice. *See* Unfair Practices Act (UPA), NMSA 1978, §§ 57–12–1 to –24 (1967, as amended through 2005). The trial court issued an order, which included the necessary language permitting application for interlocutory appeal. *See* NMSA 1978, § 39–3–4 (1999). Fidelity applied for interlocutory appeal, which we granted to consider the application of Section 59A–30–11(A) to Counts II–IV of Barrington's complaint.

{7} Barrington does not cross-appeal the trial court's grant of summary judgment on the claim for negligence, Count I. Because Fidelity's motion for summary judgment was premised solely on the application of Section 59A–30–11(A), our review on appeal is narrow. We consider only whether the trial court erred in concluding that Section 59A–30–11(A) did not apply to Barrington's remaining claims.

## II. DISCUSSION

### A. Standard of Review

{8} Summary judgment is appropriate when there is no genuine issue of material fact and when the movant is entitled to judgment as a matter of law. Rule 1–056(C) NMRA. We review de novo issues of statutory interpretation and decisions regarding motions for summary judgment. *Maestas v. Zager*, 2007–NMSC–003, ¶ 8, 141 N.M. 154, 152 P.3d 141. We view the facts in the light most favorable to the nonmoving party and make all reasonable inferences in support of a trial on the merits. *Ocana v. Am. Furniture Co.*, 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58.

### B. Section 59A–30–11(A)

{9} Fidelity argues that all of Barrington's claims are based on an alleged defect in the title search conducted when Fidelity issued a policy to Freeze. Fidelity therefore contends that Section 59A–30–11(A) bars each claim. We begin by discussing the language and history of Section 59A–30–11(A), which reads as follows:

> A. No title insurance policy may be written unless the title insurer or its title insurance agent has caused to be conducted a reasonable search and examination of the title using an abstract plant meeting the requirements of Section 59A–12–13 NMSA 1978 and has caused to be made a determination of insurability of title in accordance with sound underwriting practices. The duty to search and examine imposed by this section is solely for the purpose of enhancing the financial stability of title insurers for the benefit of insureds under title insurance policies. The New Mexico Title Insurance Law [this article] is not intended and should not be construed to create any duty to search and examine that runs to the benefit of, or to create any right or cause of action in favor of, any person other than a title insurer.

(Alteration in original.)

{10} Section 59A–30–11(A) was enacted in 1985 and originally contained only the first sentence, which requires a title insurer or its agent to conduct "a reasonable search and examination" of a title before issuing a policy. *See* 1985 N.M. Laws, ch. 28, § 11. In 1993, our Supreme Court construed the language of NMSA 1978, § 59A–30–11(A) (1985). In *Ruiz v. Garcia*, 115 N.M. 269, 270, 272, 850 P.2d 972, 973, 975 (1993), the Court held that the title insurance company owed the plaintiff, a seller of property, a statutory duty to exercise reasonable care in conducting a title search, based on Section 59A–30–11(A) (1985).

{11} Subsequently, our legislature amended Section 59A–30–11(A) by adding the last two sentences, which state that the law is not intended to impose a duty of reasonable care running to the benefit of any

person other than a title insurer. *See* 1999 N.M. Laws, ch. 60, § 20. Thus, *Ruiz* was superseded by statute. *See Benavidez v. Sierra Blanca Motors*, 122 N.M. 209, 213, 922 P.2d 1205, 1209 (1996) (stating that we presume the legislature is aware of existing law and intends to change existing law when enacting new law). Consequently, an insurer or its agent who issues a title insurance policy owes no duty of reasonable care in conducting a title search and examination to anyone but a title insurer. *See Ruiz*, 115 N.M. at 272, 850 P.2d at 975 (stating that there is no common law duty to exercise reasonable care in conducting a title search); *see also* § 59A–30–11(A).

{12} In our case, Fidelity asserts that all of Barrington's claims are based on the title search and that Section 59A–30–11(A) therefore bars all of Barrington's claims. We agree that Fidelity owes no duty to Barrington to exercise reasonable care in conducting a title search, but we do not agree that Section 59A–30–11(A) bars all of Barrington's claims.

{13} We recognize that the parties' dispute relates to Fidelity's failure to uncover the restrictive covenant during its title search. However, Barrington's claims in Counts II–IV do not rest on actions taken by Fidelity in conducting the title search; rather, the remaining claims rest on affirmative representations made by Fidelity to Barrington in regard to the transfer of Lots 8 and 9 from Freeze to Barrington. Fidelity argues that to draw a distinction between liability based on a defective search and liability based on statements regarding the results of that search would "create an exception that entirely swallows the protection provided by the statute." The plain language of Section 59A–30–11(A), as amended, reads more narrowly than Fidelity's position allows. *See Qwest Corp. v. N.M. Pub. Regulation Comm'n*, 2006–NMSC–042, ¶ 59, 140 N.M. 440, 143 P.3d 478 ("A statute's plain language is the primary indicator of legislative intent.").

{14} The language of the statute imposes a requirement on insurers to conduct "a reasonable search and examination of the title," in accordance with certain procedures. *See* § 59A–30–11(A). Thus, the statutory

duty recognized by *Ruiz*, and subsequently negated by the legislature's amendment, addressed only the insurer's actions in conducting a search and examination of the title. The amended language of Section 59A–30–11(A) specifically states that "[t]he New Mexico Title Insurance Law ... is not intended and should not be construed to create any duty to search and examine that runs to the benefit of, or to create any right or cause of action in favor of, any person other than a title insurer." The legislature's amendment relates to the duty to search and examine title created by Section 59A–30–11. We read the statute to say that it does not *create* any additional duty, right, or cause of action running to the benefit of anyone other than an insurer. We do not read Section 59A–30–11(A) to preclude the existence of a duty or prohibit a cause of action that may otherwise exist in common law or by another statute. Based on the plain language of Section 59A–30–11(A), we conclude that the legislature did not intend to preclude liability that is based on a duty arising out of common law or another statute. *Cobb v. State Canvassing Bd.*, 2006–NMSC–034, ¶ 34, 140 N.M. 77, 140 P.3d 498 ("In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the legislature." (internal quotation marks and citation omitted)). Fidelity would have us go back to the underlying cause of this lawsuit-Fidelity's failure to discover the restriction on Lots 8 and 9 when issuing the title policy to Freeze-and premise all of Barrington's claims on this fact. Fidelity's argument falls short, however, because the claims alleged in Counts II–IV are based on events and other duties that arose as separate from the issuance of the title policy to Freeze. Section 59A–30–11(A) does not protect Fidelity from liability for breaching a duty that may exist outside of the duty described within the statute. Accordingly, we hold, as a matter of law, that Section 59A–30–11(A) does not bar recovery on Barrington's remaining claims, and we affirm the trial court's denial of summary judgment on Counts II–IV.

**C. Other Grounds Argued by Fidelity on Appeal**

{15} As a preface to this part of the opinion, we reiterate that Fidelity's motion was

based on one argument—that Section 59A–30–11(A) barred all of Barrington's claims. There were no other arguments made. With this in mind, we address Fidelity's remaining contentions on appeal.

### 1. Count II–Negligent Misrepresentation

{16} In the reply brief, Fidelity argues that since Barrington's claim for negligence is barred, Barrington's claim for negligent misrepresentation must similarly fail because negligent misrepresentation is a form of negligence. We are not persuaded.

{17} Unlike a claim for negligence in conducting a title search, a claim for negligent misrepresentation rests on a duty to disclose information. *See Ruiz*, 115 N.M. at 274–75, 850 P.2d at 977–78 (distinguishing the duty of reasonable care under Section 59A–30–11(A) from the duty to disclose information, which is required to establish a claim for negligent misrepresentation); *Stotlar v. Hester*, 92 N.M. 26, 28–29, 582 P.2d 403, 405–06 (Ct.App.1978) (discussing negligent misrepresentation with reliance on the Restatement (Second) of Torts § 552 (1977)); *see also* Restatement (Second) of Torts § 552(1) ("One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."). In our case, Barrington's negligent misrepresentation claim rests on a duty to disclose information that may have arisen out of Fidelity's actions and statements regarding the transfer of Lots 8 and 9 from Freeze to Barrington. "Liability arises when the person furnishing information owes a duty to give it with care and the person receiving it has a right to rely and act upon it and does so to his damage." *Valdez v. Gonzales*, 50 N.M. 281, 287, 176 P.2d 173, 177 (1946) (internal quotation marks and citation omitted) (stating that a negligent statement, either written or oral, may be the basis for recovery but observing that "[n]ot every casual response,

not every idle word, however damaging the result, gives rise to a cause of action" (internal quotation marks and citation omitted)). This duty is clearly distinguishable from the duty of reasonable care, on which Barrington's claim for negligence was grounded. Thus, we cannot conclude that the failure of Barrington's claim for negligence affects the merits of Barrington's claim for negligent misrepresentation.

{18} As we pointed out before, the parties did not argue below, and the trial court did not reach, the question of whether Fidelity owed a duty of disclosure to Barrington. *Cf. Ruiz*, 115 N.M. at 274, 850 P.2d at 977 ("In addition to finding that [the defendant] undertook no obligation and thus had no duty to [the plaintiff] regarding the condition of the title, the [trial court] found that [the defendant] did not represent the condition of the title to [the plaintiff]."). Therefore, we do not consider the issue. *State v. Ware*, 118 N.M. 703, 705, 884 P.2d 1182, 1184 (Ct.App. 1994) ("We do not address issues not raised in the trial court, and we do not address issues upon which no record was made.").

### 2. Counts III and IV–Breach of Implied Contract and Violation of the UPA

{19} In the reply brief for the first time, Fidelity makes additional arguments regarding Barrington's claims for breach of implied contract and violation of the UPA. As noted earlier, Fidelity's motion for summary judgment was premised solely on Section 59A–30–11(A). Fidelity's arguments below did not alert the trial court or Barrington to the issues now raised on appeal. *Garcia v. La Farge*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) (stating that a party must preserve an issue for appeal in order to alert the trial court to any claim of error and to provide the opposing party with a fair opportunity to respond); *see also Morningstar Water Users Ass'n v. Farmington Mun. Sch. Dist. No. 5*, 120 N.M. 307, 320, 901 P.2d 725, 738 (1995) (stating that the trial record was inadequate because the issues were not briefed or argued below and therefore declining to address the issues that were raised on appeal for the first time). Thus, we decline to address Fidelity's remaining arguments.

## III. CONCLUSION

{20} We conclude that Section 59A–30–11(A) does not bar Barrington's claims for negligent misrepresentation, implied breach of contract, and violation of the UPA because these claims are not based on a duty to use reasonable care in a title search. Accordingly, we affirm the trial court's order denying in part summary judgment.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.